IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SAKILIBA MATHILDE MINES,

     Plaintiff,

v.            CIVIL ACTION NO. 5:04-0920

SOUTHERN REGIONAL JAIL, et al.,

     Defendants.

## ORDER

Pending before the Court are motions by Defendants Teodoro Jimenez, M.D., and David Walker, M.D. to dismiss or, in the alternative for summary judgment, and renewed motions to dismiss and to enforce the Court's previous Memorandum Opinion and Order entered on April 20, 2005. [Doc. nos. 53, 55, and 95].  For the following reasons, the Court **GRANTS** Drs. Jimenez and Walker's motions for summary judgment and **GRANTS** their motion to enforce the Court's prior Memorandum Opinion and Order.

## I.
### Procedural History

As set forth in the Court's prior Memorandum Opinion and Order, this case is developing a quite extensive and complex procedural history.  Originally, Plaintiff filed this action *pro se* against the Southern Regional Jail and a variety of individuals, including Defendants Walker and Jimenez.  Thereafter, Defendants filed motions to dismiss, and Plaintiff filed her first motion to Amend her Complaint.  Plaintiff then retained counsel, who filed a "Supp. Motion & Memorandum for Amended Complaint" and a proposed "Amended Complaint."  Plaintiff also filed

a Supplemental Response to the motions to dismiss, to which Defendants filed individual Replies, and then Plaintiff filed a Second Supplemental Response, to which Drs. Jimenez and Walker filed individual Surreplies.  Thereafter, Plaintiff filed a "Motion for a Second Amended Complaint," a "Second Amended Complaint," and a "Second Amended Complaint Errata."  Drs. Jimenez and Walker objected to Plaintiff's "Motion for a Second Amended Complaint."

After considering the issues presented by those motions, the Court granted Drs. Jimenez and Walker's motions to dismiss Claims 5 and 6, which alleged medical malpractice pursuant to West Virginia Code § 55-7B-3, because Plaintiff failed to comply with the mandatory prerequisites found in West Virginia Code § 55-7B-6 (2003).  However, the Court also permitted Plaintiff to amend her Complaint and directed her to file a Revised Second Amended Complaint. The Revised Second Amended Complaint included as "Claim 2" an allegation that Drs. Jimenez and Walker showed deliberate indifference towards Plaintiff's serious medical needs.  Although Drs. Jimenez and Walker argued that this claim also should be dismissed, the Court denied the motion without prejudice to allow the parties to fully brief the matter after the Revised Second Amended Complaint was filed.  Now, this issue is ripe for decision so the Court will proceed to resolve it.

## II.
## Facts

As explained in the Court's earlier Memorandum Opinion and Order, this case involves events which occurred while Plaintiff was an inmate at the Southern Regional Jail.  In her Revised Second Amended Complaint, Plaintiff contends that, on September 5, 2002, she passed out from hypoglycemia and she hit her head, shoulder, and knee on a concrete floor. *Revised Second Amended Complaint*, at unnumbered ¶¶ 3 & 5.  Plaintiff was transported for evaluation to

Appalachian Regional Hospital in Beckley, West Virginia and, once there, was seen by Dr. Jimenez. Plaintiff asserts that "Dr. Jimenez refused to give . . . [her] a cervical collar for her neck[,]" and instructed the two officers accompanying her to return her to the jail. *Id*. at unnumbered ¶¶ 8 & 9.

Once Plaintiff returned to the jail, Plaintiff asserts that she requested "to see a social worker for counseling for her emotional distress." *Id*. at unnumbered ¶ 11.  Plaintiff asserts she was sent to see Dr. Walker, but he "failed to examine or diagnose her mental health altogether and instead, interrogated her on her education and career, while arguing with her that she needed no physical care, acting as an agent of the Superintendent." *Id*. at unnumbered ¶¶ 12 & 13.

In Claim 2 of the Revised Second Amended Complaint, Plaintiff asserts, inter alia, that both Drs. Jimenez and Walker were acting under color of state law and showed a deliberate indifference to her serious medical needs, which resulted "in further serious medical needs and permanent injuries, pursuant to Sec. 1997." *Id*. at unnumbered ¶ 39.  Specifically, Plaintiff alleges that Dr. Jimenez "failed to prescribe a soft collar to and to instruct guards to protect Plaintiff with serious medical needs from foreseeable use of force by guards, resulting in further serious physical and mental injuries." *Id*. at unnumbered ¶ 37.  She further alleges that Dr. Walker "failed to conduct any examination and diagnosis or to provide any support for Plaintiff's serious mental needs, resulting in further serious emotional distress." *Id*. at unnumbered ¶ 38.  Therefore, she claims that both Drs. Jimenez and Walker violated her Eighth Amendment right against cruel and unusual

punishment and 42 U.S.C. § 1983.[1]  Drs. Jimenez and Walker now move to dismiss or, in the

alternative, be granted summary judgment on these claims.

### III.
### Standard of Review

In ruling on this motion, the Court first recognizes that the parties have submitted

affidavits and other documents outside of the pleadings in support of their positions.  "When a

motion to dismiss under Rule 12(b)(6) is founded on matters outside the pleadings, the District Court

is obligated to treat the motion to dismiss as one for summary judgment and to dispose of it as

provided in Rule 56." *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir.1974) (internal quotation

marks and citations omitted).[2]  To obtain summary judgment, the moving party must show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  *Fed. R. Civ. P.* 56(c).  In considering a motion for summary judgment, the Court will

not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the

underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

---

[1]Section 1983 creates liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives an individual of any "rights, privileges, or immunities secured by the Constitution" or other federal law. 42 U.S.C. § 1983.

[2]Both parties have recognized that the Court may treat this motion as one for summary judgment as opposed to a motion to dismiss, and Plaintiff has submitted counter affidavits and other documents to refute Drs. Jimenez and Walker's motions and affidavits.

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## IV.
### Discussion

The Eighth Amendment prohibits cruel and unusual punishment, and the reach of this protection extends to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Shakka v. Smith*, 71 F.3d 162, 165 (4th Cir. 1995) (internal quotation marks and citations omitted).  This treatment includes the "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  In order to prove the infliction of cruel and unusual punishment, a prisoner must prove two elements: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (other citations omitted)).  In a case, as here, where it is alleged that a prisoner received inadequate medical care, the first element is met if the prisoner has a serious medical condition. *Id*.  The second element is met if the prisoner can show the prison official acted with deliberate indifference. *Id*. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by

-5-

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "'To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Miller v. Primecare Medical AS*, 89 F. Supp.2d 779, 781 (N.D. W. Va. 2000) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)).

In *Estelle*, the Supreme Court carefully distinguished between inadvertent failures to provide adequate medical care and a showing of deliberate indifference to a prisoner's serious medical needs. 429 U.S. at 105-06. As the Supreme Court explained:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* Applying this standard in *Estelle*, the Supreme Court rejected a claim by a prisoner that he should have received more in the way of diagnosis and treatment for a back injury. The Supreme Court found the prisoner was examined by medical personnel on a number of occasions, and his claim that they failed to pursue some diagnostic and treatment options, such as a back x-ray, is a

classic example of medical judgment.  As such, the Supreme Court held that "[a] medical decision

not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most

it is medical malpractice," which could be brought under state law. *Id*. at 107.

Following the principles established in *Estelle*, the Fourth Circuit in *Sosebee v.*

*Murphy*, 797 F.2d 179 (4th Cir. 1986), similarly affirmed a lower court's dismissal of a deliberate

indifference claim against medical personnel who treated a prisoner who pierced his esophagus on

a steak bone.  Five days after the injury, the prisoner died. *Id*. at 180.  Nevertheless, the Fourth

Circuit found that the record established that the prisoner had received substantial medical treatment

and his claims for deliberate indifference against the medical personnel were actually claims of

negligence under tort law, which did not constitute an Eighth Amendment violation. *Id*. at 181.[3]

Similarly, in *Johnson*, the Fourth Circuit found that a failure to diagnose a pituitary

tumor, which left an inmate blind, did not constitute deliberate indifference. 145 F.3d at 165-66.

First, the Fourth Circuit recognized that a pituitary tumor is a serious medical condition which meets

the first element of the test to prove an Eighth Amendment violation. *Id*. at 168.  However, the

Fourth Circuit said the inmate also must be able to establish that "the doctor subjectively 'knows of'

the serious medical condition itself, not the symptoms of the serious medical condition." *Id*. (citation

omitted).  In the case before it, the Fourth Circuit found that the inmate "produced no evidence that

---

[3]The Fourth Circuit allowed the claims against those correctional officers who were on duty almost twenty-four hours before the prisoner's death to survive because the evidence indicated that they were aware of the seriousness of the prisoner's condition, but refused to seek medical assistance. *Id*. at 183.

the doctors subjectively knew about the pituitary tumor and deliberately failed to treat it." *Id.* Thus, the Fourth Circuit concluded that, at most, the inmate showed negligence by the doctors in failing to make the correct diagnosis and his claim of deliberate indifference could not survive summary judgment. *Id.* at 168-69.

Turning to the facts now before the Court, Plaintiff alleges in her Revised Second Amended Complaint that the "head trauma and injuries to her neck, shoulder, knee and ankle amounted to serious medical needs." *Revised Second Amended Complaint,* at unnumbered ¶ 35. She alleges that Dr. Jimenez showed deliberate indifference to her medical needs and should have prescribed her a soft collar and instructed prison officials to avoid using excessive force against injured inmates. *Id.* at unnumbered ¶¶ 37 & 39. As a result, Plaintiff asserts that she suffered further serious medical needs and permanent injuries. *Id.* at unnumbered ¶ 39.

In reviewing the medical records and affidavits submitted by the parties, the relevant evidence with respect to Dr. Jimenez is that he was working in the emergency room at the hospital when he received a call from the jail stating that Plaintiff had fallen and was complaining of head, neck, right knee, and left ankle pain. Dr. Jimenez requested that Plaintiff be transferred to the hospital for evaluation. Emergency Medical Services personnel reported that Plaintiff's blood sugar level was 75 mg/dl, which is within the normal range. Once at the hospital, a nurse determined that Plaintiff's "Glasgow coma scale was 15, which is the highest level of assessed consciousness, alertness and responsiveness." *Affidavit of Dr. Jimenez*, at ¶ 14. In addition, Plaintiff's vital signs were normal, she was alert and oriented with even and unlabored respirations, her lungs were clear,

and her skin was warm and dry.  Plaintiff's only complaints were of head and neck pain.  Dr.

Jimenez directed that Plaintiff receive vitamins via intravenous fluids upon being told that Plaintiff

had not eaten that day.  A blood test was performed which showed normal results, except for a

slightly low level of potassium.

Upon examining Plaintiff's head, Dr. Jimenez found it to be non-tender with no

swelling and no deficits detected in the cranial nerves.  X-rays and a CT scan were performed and

sensory and motor testing was performed.  Based upon these tests and his examination of Plaintiff,

Dr. Jimenez "formed the diagnostic impression that the patient had a contusion of the head with no

hematoma, a cervical strain, and a left ankle sprain." *Id*. at ¶ 26.  Dr. Jimenez also stated that he did

not give Plaintiff a cervical collar when discharged because, in his medical judgment, one was not

indicated.  Plaintiff "had no fracture, malalignment, or objective indication of significant muscle

spasm of the neck region." *Id*. at ¶ 32.  Plaintiff was discharged from the hospital and Dr. Jimenez

understood that Plaintiff was shackled, but he did not instruct the correctional officers to shackle her.

*Id*. at ¶¶ 28 & 29.

Plaintiff states she is a physician currently practicing in the District of Columbia.  In

her affidavits, Plaintiff complains, inter alia, that she received the wrong intravenous fluid, her

potassium level was not corrected, and she should have been given a cervical collar.  In addition,

Dr. Jimenez failed to perform a complete neurological examination, and he should have instructed

prison officials to transport her with care, which was not done.  As a result of the fall, Plaintiff

asserts that she still suffers from chronic neck and right shoulder pain.

-9-

In considering these facts in the light most favorable to Plaintiff, the Court finds that, even if it assumes that Plaintiff suffered a serious medical need under the objective prong of test, she cannot met the second prong.  This is a classic case of a doctor's exercise of medical judgment as  explained in *Estelle*.  The fact that Plaintiff believes Dr. Jimenez should have conducted additional tests and given her a cervical collar does not mean that he was deliberately indifferent to a serious medical need.  In fact, the evidence shows that a number of test were conducted on Plaintiff and, based upon those test results and Dr. Jimenez's examination of Plaintiff, he determined that a cervical collar was not needed and that she could be returned to the jail.  Thus, at best, Plaintiff could possibly establish that Dr. Jimenez was negligent.[4]  There is no evidence that he was deliberately indifferent to a serious medical needs, nor should he be held accountable to Plaintiff's alleged maltreatment when she was transported back to the jail.  Accordingly, the Court **GRANTS** Dr. Jimenez's motion for summary judgment.[5]

---

[4]As previously mentioned, the Court dismissed Plaintiff's claims of malpractice against both Drs. Jimenez and Walker by the Memorandum Opinion and Order dated April 20, 2005.

[5]In her "Motion for Second Supplemental Response to Doctors' Motions for Dismissal/Summary Judgment," Plaintiff attaches a report from Alison F. Henderson, D.C., dated November 21, 2003, which diagnosed Plaintiff with a cervical sprain/strain secondary to trauma and a right shoulder dislocation and contusion/ possible rotator cuff tear.  Drs. Jimenez and Walker strongly oppose the Court granting the motion and consideration of this evidence.  However, even if the Court considers the evidence and would find it relevant to the events which occurred more than a year earlier, it does not save Plaintiff's claim because, at most, it goes to whether or not she had a serious medical need, not to whether Dr. Jimenez acted with deliberate indifference in treating her.  Thus, consideration of such evidence would not change this Court's decision.

As an aside, the Court curiously notes that Plaintiff apparently was seen by Dr. Henderson at the Neurohealth Physiotherapy Center in Washington D.C. on November 21, 2003, yet Plaintiff apparently told Robert K. Madsen, Ph.D. that she was not released from prison until December 31, 2003.  A search of the Federal Bureau of Prisons' website confirms that Plaintiff was not released from prison until December 31, 2003.

Next, the Court turns to the claim against Dr. Walker.  In the Revised Second Amended Complaint, Plaintiff alleges that Dr. Walker failed to examine or diagnose her or provide her any support with regard to her serious mental needs, which resulted in further serious emotional distress.  In his second affidavit, Dr. Walker states that he saw Plaintiff in his professional role as a psychiatrist and he attempted to evaluate her, which included "listening to, weighing and making notations related to her complaints and concerns, in an effort to determine whether, at that time, she had any emotional or psychiatric condition responsive to treatment or necessitating further workup." *Second affidavit of Dr. Walker*, at ¶ 3.  Based upon the information he gathered, he stated that he "could not find psychiatric or emotional conditions responsive to or requiring pharmacologic intervention or additional workup[.]" *Id.* at ¶ 4.  In addition, Dr. Walker stated that "[w]hen . . . [he] attempted to consult with her further on September 16, 2002, Ms. Mines declined to meet with" him. *Id.*  In his clinical notes from his meeting with Plaintiff, Dr. Walker further said:

> The whole time I talk to her she constantly blames others for her situation.  Nothing vaguely suggests any sense of responsibility.  She obviously is looking for reasons to sue.  Nothing from her history fits her version of events.  An angry, manipulative history, in my opinion.  She uses value laden terms–molestation (for a search), brutalized, etc.  Nothing supports her medical history either.  We need to track down her story–birth, education, practice, etc.

*Clinical Notes* of 9/9/02.  Dr. Walker deferred a diagnosis on Axis I and stated that no intervention was planned. *Id.*

In her second affidavit, Plaintiff states that Dr. Walker failed to use standard methodology in evaluating her and did not probe into her complaints and document them.  Plaintiff

stated that Dr. Walker did not seem concerned about her as a human being and the trauma she had

endured. Plaintiff asserts that the Administration asked Dr. Walker to see her in order to discredit

her in front of authorities.  Plaintiff alleges that Dr. Walker insulted her and "severely aggravated

. . . [her] already impaired psychological and mentally abused state[.]" *Second affidavit of Plaintiff*,

at ¶ 7.

Based upon these facts, the Court first finds there is no evidence Plaintiff was

suffering a serious mental health need at the time she was evaluated.  Although obviously mental

health issues can be serious, Plaintiff has failed to make such a showing in this case.  In her initial

Complaint, Plaintiff claimed that she felt humiliated and she now claims that Dr. Walker's

questioning and attitude showed a lack of concern and aggravated her mental condition.  However,

the Court finds that these allegations do not equal a serious mental health problem.  In Plaintiff's

"Motion for Third Supplemental Response to Doctors' Motions for Dismissal/Summary Judgment,"

Plaintiff submits a report dated January 31, 2006, from Robert K. Madsen, Ph.D., a clinical and

forensic psychologist, who diagnosed Plaintiff with, inter alia, Posttraumatic Stress Disorder,

chronic in nature, and he found that she "is mentally and emotionally upset about what transpired

during her incarceration, regardless of the veracity of any particulars noted." *Report of Dr. Madsen*,

at 7-8.  However, this evaluation occurred more than four years after she was evaluated by Dr.

Walker.  Merely because she has a diagnosis in 2006 that may indicate a serious mental health

condition, it does not mean she had that need in 2002.   Moreover, assuming that she did have a

serious mental health condition in 2002, Plaintiff's claim of deliberate indifference against Dr.

Walker fails because, as in the case with Dr. Jimenez, her complaints involve questions of medical

judgments, not deliberate indifference.  Certainly, neither his treatment notes, nor Plaintiff's allegations, set forth facts demonstrating that his treatment, or lack thereof, was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller*, 89 F. Supp.2d at 781 (internal quotation marks and citation omitted).  Indeed, Dr. Walker attempted to follow up with Plaintiff a week after his first consultation with her, but she refused to meet with him.  Thus, under these circumstances, the Court **GRANTS** Dr. Walker's motion for summary judgment.[6]

In relation to these motions, Plaintiff has filed three motions to file supplemental responses. [Doc. nos. 76, 87, & 90].  The first supplemental response contains an affidavit by Plaintiff in response to Dr. Walker's Second Affidavit.  As the Court has considered that affidavit in its ruling today, the Court **GRANTS** Plaintiff's first motion. [Doc. no. 76].  However, Plaintiff's second motion includes the report by Dr. Henderson and her third motion contains the report of Dr. Madsen.  As explained above, even if the Court considers this evidence, it does not change the Court's ultimate conclusions in this case.  Nevertheless, as the reports are discussed herein, the Court **GRANTS** the motion to consider these reports only to the extent they are related to the motions resolved by this Memorandum Opinion and Order. [Doc. no. 87 & 90].

---

[6]Both Drs. Jimenez and Walker also argue that they are not state actors and, if they were, they would be entitled to qualified immunity.  As the Court has found that they are both entitled to summary judgment on other grounds, the Court declines to address these two issues.

**V.**
**Conclusion**

Accordingly, the Court **GRANTS** Plaintiff's three motions to supplement her response [doc. nos. 76, 87, & 90], and **GRANTS** Drs. Jimenez and Walker's motions for summary judgment [doc. nos. 53, 55, & 95].  With respect to Drs. Jimenez and Walker's motions, the Court also **GRANTS** their request to enforce the Court's early Memorandum Opinion and Order dated April 20, 2005, in that Plaintiff cannot pursue Claims 5 & 6 against them.  As there are no other claims against Drs. Jimenez and Walker, the Court **DISMISSES** these Defendants from this action.


The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:          February 10, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE